# IN THE SUPREME COURT OF IOWA

No. 09–0161

Filed December 3, 2010

**JAMES NAUMANN,**

Appellant,

vs.

**IOWA PROPERTY ASSESSMENT APPEAL BOARD,**

Appellee.

_____

Appeal from the Iowa District Court for Adair County, David L. Christensen, Judge.

Property owner appeals from the district court's judicial review of the decision of the Iowa Property Assessment Appeal Board. **AFFIRMED.**

Mark L. Smith of Jordan, Oliver & Walters, P.C., Winterset, for appellant.

Jessica Braunschweig-Norris and Curtis Swain, Des Moines, for appellee.

James E. Brick and James E. Nervig of Brick Gentry P.C., Des Moines, intervenor-appellee Adair County Board of Review.

Thomas J. Miller, Attorney General, Donald D. Stanley, Jr., Special Assistant Attorney General, and James D. Miller, Assistant Attorney General for amicus curiae, the Director of the Iowa Department of Revenue.

**HECHT, Justice.**

An owner of agricultural property in Madison and Adair Counties contests the valuation of his property in Adair County, contending it violates Iowa Code section 441.21(1)(*d*) (2007), because the valuation of his Adair County agricultural land exceeds by more than five percent the valuation of his adjacent agricultural land in Madison County. Because we conclude section 441.21(1)(*d*) does not apply to agricultural property, we affirm.

## I. Background Facts and Proceedings.

James Naumann owns approximately nine hundred acres of agricultural property spanning the Adair-Madison County line. After receiving January 1, 2007, property assessments from both counties, Naumann filed a petition to the Adair County Board of Review for each of his thirteen parcels of land located in Adair County, asserting his property was assessed for more than was authorized by law. The board of review denied each of his petitions, concluding Naumann had not provided "sufficient [evidence] to prove the assessment was excessive."

Naumann appealed to the Iowa Property Assessment Appeal Board (IPAAB), contending his Adair County property was assessed at a value more than five percent higher than his adjacent Madison County property in violation of Iowa Code section 441.21(1)(*d*). After an evidentiary hearing, the IPAAB concluded the Adair County Assessor properly assessed the value of Naumann's land and the assessments were neither excessive nor done in error.

Naumann petitioned for judicial review of the IPAAB's decision. The district court allowed the Adair County Board of Review to intervene. Following oral arguments, the district court affirmed the IPAAB's decision.

Naumann appeals, contending the IPAAB erred in failing to adjust downward the valuation of his Adair County real estate under section 441.21(1)(*d*) and asserting the district court erred in overruling his offer of new evidence supporting his theory of valuation.

## II. Scope of Review.

In reviewing an agency decision on judicial review, we will apply the standards of chapter 17A to determine if we reach the same results as the district court. *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). If the agency's action was based on an erroneous interpretation of a provision of law whose interpretation has not been clearly vested in the agency, we shall reverse, modify or grant other appropriate relief from the agency action. Iowa Code § 17A.19(10)(*c*). The IPAAB was created "for the purpose of establishing a consistent, fair, and equitable [statewide] property assessment appeal process." *Id.* § 421.1A(1). The IPAAB has been delegated the authority to adopt rules "for the administration and implementation of its powers" and rules "necessary for the preservation of order and the regulation of proceedings before the board." *Id.* § 421.1A(4)(*e*), (*f*). However section 421.1A does not give explicit authority to the IPAAB to interpret section 441.21(1)(*d*). Neither party contends, and we do not conclude, the IPAAB has implicitly been granted authority to interpret section 441.21(1)(*d*). Accordingly, we will not give deference to the interpretation applied by the IPAAB and will substitute our own judgment for that of the IPAAB if we conclude it made an error of law. *Id.* § 17A.19(10)(*c*); *see also Renda*, 784 N.W.2d at 14–15.

To the extent a challenge to a district court ruling on the admissibility of evidence requires the interpretation of a statute, our

review is for errors at law. *See State v. Stone*, 764 N.W.2d 545, 548 (Iowa 2009).

### III.  Discussion.

The IPAAB concluded section 441.21(1)(*e*) and (*f*) provided the basis for determining the value of the agricultural property in Iowa, implicitly rejecting Naumann's argument that the limitations on property valuation found in section 441.21(1)(*d*) also applied to agricultural property.  The IPAAB then concluded Naumann's property had been correctly valued pursuant to section 441.21(1)(*e*) and (*f*).  Naumann contends the IPAAB erred in concluding section 441.21(1)(*d*) does not apply to agricultural land.

To assess Naumann's claim, we begin with a review of section 441.21(1), describing how taxable property is to be valued in Iowa.

> *a.* All property subject to taxation shall be valued at its actual value . . . and, except as otherwise provided in this section, shall be assessed at one hundred percent of its actual value . . . .
>
> *b.* The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property except as otherwise provided in this section.
>
> . . . .
>
> *d.* Actual value of property in one assessing jurisdiction shall be equalized as compared with actual value of property in an adjoining assessing jurisdiction.  If a variation of five percent or more exists between the actual values of similar, closely adjacent property in adjoining assessing jurisdictions in Iowa, the assessors thereof shall determine whether adequate reasons exist for such variation.  If no such reasons exist, the assessors shall make adjustments in such actual values to reduce the variation to five percent or less.
>
> *e.* The actual value of agricultural property shall be determined on the basis of productivity and net earning capacity of the property determined on the basis of its use for agricultural purposes capitalized at a rate of seven percent and applied uniformly among counties and among classes of property.  Any formula or method employed to

determine productivity and net earning capacity of property shall be adopted in full by rule.

*f*. In counties or townships in which field work on a modern soil survey has been completed since January 1, 1949, the assessor shall place emphasis upon the results of the survey in spreading the valuation among individual parcels of such agricultural property.

*g*. Notwithstanding any other provision of this section, the actual value of any property shall not exceed its fair and reasonable market value, except agricultural property which shall be valued exclusively as provided in paragraph "*e*" of this subsection.

Iowa Code § 441.21(1).

Naumann asserts that because the plain language of section 441.21(1)(*d*) applies the five percent variance limitation to "property" without excluding agricultural property, the valuation of his agricultural property in Adair County must be adjusted so it does not exceed by more than five percent the valuation of his adjacent property in Madison County. Because he claims the variance between the Adair and Madison County valuations is thirty-six percent, he seeks to have the actual value of his property in Adair County reduced.[1]

The IPAAB contends the five percent variance limitation in paragraph (*d*) is inapplicable to agricultural land valuations. This contention relies on paragraph (*g*) providing agricultural property shall be valued "exclusively as provided in" paragraph (*e*) on the basis of productivity and net-earning capacity.

A statute is ambiguous when reasonable persons could disagree as to its meaning. *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001).

---

[1] Naumann's computation of the variance in assessed valuations is based upon his own calculations of the value of his property. The appellants dispute Naumann's methods for calculating the variance. However, because we conclude section 441.21(1)(*d*) does not apply to agricultural land, we need not determine whether Naumann's methods accurately establish a thirty-six percent variance in values, as he claims.

"Ambiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes." *Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 425 (Iowa 2002). "Ambiguity arises in two ways—either from the meaning of specific words or 'from the general scope and meaning of the statute when all of its provisions are examined.' " *State v. McCullah*, 787 N.W.2d 90, 94 (Iowa 2010) (quoting *Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996)). "Even when a statute appears unambiguous on its face it can be rendered ambiguous by its interaction with and its relation to other statutes." 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 46:4, at 188–89 (7th ed. 2007).

We conclude section 441.21(1) is ambiguous. Reasonable minds could disagree as to whether section 441.21(1)(*d*) applies to all land, including agricultural land, or whether section 441.21(1)(*e*), (*f*), and (*g*) together preclude the application of section 441.21(1)(*d*) to agricultural land. Because the statute is ambiguous, we will apply our rules of statutory construction to ascertain the intent of the legislature. *Am. Home Prods. Corp. v. Iowa State Bd. of Tax Review*, 302 N.W.2d 140, 142 (Iowa 1981). We will avoid "strained, impractical or absurd results." *Id.* We will generally give the language its usual and ordinary meaning, but "the manifest intent of the legislature will prevail over the literal import of the words used." *Id.* at 142–43. We consider the object to be accomplished by the statute as well as the evils to be remedied in reaching a "reasonable or liberal construction which will best effect its purpose rather than one which will defeat it," considering all parts of the statute together without giving undue importance to any single or

isolated portion. *Id.* at 143. Finally, when construing tax statutes, we will resolve doubt in favor of the taxpayer. *Id.*

Reviewing the statute with these considerations in mind, we conclude section 441.21(1)(*d*) does not apply to agricultural property. Paragraph (*a*) provides that all property shall be assessed at its actual value. While property's actual value is generally its fair and reasonable market value as determined in paragraph (*b*), agricultural land is valued differently. The actual value of agricultural land is determined "on the basis of productivity and net earning capacity" capitalized at seven percent and applied uniformly among counties and classes of property. Iowa Code § 441.21(1)(*e*). Paragraph (*g*) provides that agricultural property shall only be valued as provided in paragraph (*e*). *Id.* § 441.21(1)(*g*).

The IPAAB contends, and we agree, the harm intended to be addressed by section 441.21(1)(*d*) is the potential that two similar non-agricultural properties lying on different sides of a jurisdictional boundary will be valued substantially differently. This is likely to happen when the properties are being valued based on fair and reasonable market value. The determination by a county assessor of a property's fair and reasonable market value is "far from being an exact science. . . . [V]aluation, for assessment purposes, is in the realm of opinion and there is no absolute standard." *Bankers Life Co. v. Zirbel*, 239 Iowa 275, 287, 31 N.W.2d 368, 374–75 (1948). The methods, such as market comparables, used by assessors to determine the fair and reasonable market value necessarily involve some degree of subjectivity. In theory, similar adjacent properties should not have widely varying valuations merely because they are valued by different assessors on opposite sides of a jurisdictional boundary. Thus, it makes sense to provide a method

of adjusting the values of adjacent, similar properties on different sides of a jurisdictional boundary if they vary significantly without good reason, as paragraph (*d*) provides.

The IPAAB asserts the risk of unfair subjective valuations does not exist when agricultural property is valued based on the objective factors required by section 441.21(1)(*e*)—productivity and net-earning capacity. These objective criteria for assessing the value of agricultural property are mandated by section 441.21(1)(*e*) and implemented by Iowa Administrative Code rule 701—71.12(1),[2] and they leave no room for subjective assessment of a property's value. Instead, the actual value of agricultural property is determined by using an average of five years of actual county productivity data for various crops to determine an aggregate land value for each assessing jurisdiction. Iowa Admin. Code r. 701—71.12(1)(*a*). This aggregate land value is spread among individual parcels in a jurisdiction utilizing corn suitability ratings (CSRs) derived from the modern soil survey,[3] as required by section 441.21(1)(*f*). *Id.* The use of this agricultural property valuation formula which takes into account the property's specific CSR removes the need for subjective determinations by the assessor.[4] We conclude the purpose

---

[2]We previously approved this formula as a "reasonable application of the productivity, net-earning capacity, and seven-percent capitalization criteria established by section 441.21(1)(*e*)." *H & R P'ship v. Davis County Bd. of Review*, 654 N.W.2d 521, 526 (Iowa 2002).

[3]The modern soil survey provides detailed mapping and soil identification for each parcel of property within a county and identifies all soil types and terrain contained in a parcel. Each individual parcel within an assessing jurisdiction has a CSR assigned to it by a modern soil survey map, and this number remains constant from year to year. The CSR is the measure of the potential bushel per acre of corn that can be grown on that acre.

[4]Naumann does not contend that the county assessors did not follow established rules for the assessment of agricultural property. And aside from the failure to take into account paragraph (*d*), Naumann does not contend the current methods of assessing agricultural property are unlawful.

of paragraph (*d*)—to make adjustments where the inherently subjective fair market analysis results in substantial valuation disparities between adjacent non-agricultural properties in different counties—is not served by applying it to agricultural land which is valued according to a formula based on objective criteria.

Our conclusion that the legislature did not intend section 441.21(1)(*d*) to apply in the valuation of agricultural property is strengthened by the paragraph's incompatibility with the section 441.21(1)(*g*) directive that agricultural property be valued exclusively on the basis of its productivity and net-earning capacity. The current formula for calculating the value of individual parcels of agricultural property begins with a determination by the department of revenue of the total aggregate value of all agricultural property in each county.[5] Because this aggregate valuation is not subject to change by county assessors, any downward adjustment of the value of Naumann's agricultural property in Adair County by the assessors of Adair and Madison Counties under section 441.21(1)(*d*) would necessarily result in an increase in the value of other agricultural property in Adair County. Both the decrease in value of Naumann's land and the resulting increase in the value of the other property in Adair County, if section 441.21(1)(*d*) were to apply, would not be driven by the productivity and net-earning capacity of Naumann's property in Adair County, as required by section 441.21(1)(*e*) and (*g*), but rather by a comparison with the valuation assigned to adjacent property in a different county. The inconsistency between the effect of section 441.21(1)(*d*) and the objective formula for

---

[5]The formula for calculating the value of agricultural property, in its simplest form (and not taking into account buildings on the property) is the aggregate land value of the county divided by the total CSRs for the county times the CSR attributable to each parcel.

determining the value of specific agricultural land leads us to conclude section 441.21(1)(*d*) has no application in the valuation of agricultural land. Accordingly, we affirm the decision of the IPAAB.

Naumann also argues the district court erred in refusing an offer of new evidence. In particular, he contends a journal article addressing the role of CSRs in agricultural land valuation was admissible under section 441.38 in the judicial review proceeding to prove his entitlement to a downward adjustment of the valuation of the Adair County property under section 441.21(1)(*d*).[6] Because we have concluded section 441.21(1)(*d*) has no application in this case, and Naumann makes no argument that the new evidence was probative on any issue other than whether the valuation of his Adair County property exceeded by more than five percent the valuation of his adjacent property in Madison County, the district court's evidentiary ruling resulted in no prejudice requiring reversal. *See State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004) (noting that error may not be predicated on a ruling admitting or excluding evidence unless a substantial right of the party is affected).

## IV. Conclusion.

Iowa Code section 441.21(1)(*d*) does not apply to agricultural property. We affirm the decision of the Iowa Property Assessment Appeal Board concluding Naumann's agricultural property in Adair county was valued correctly. Because we find no reversible error in the district court's evidentiary ruling, that ruling does not provide a basis for reversal.

**AFFIRMED.**

---

[6]The version of section 441.38 in effect at the time of the district court's ruling authorized the introduction of new evidence in the district court on judicial review of IPAAB decisions. Iowa Code § 441.38(1) (2007). However, the statute has since been amended to provide "no new evidence . . . may be introduced in an appeal from the [IPAAB] to the district court." *Id.* § 441.38(1) (2009).