# IN THE COURT OF APPEALS OF IOWA

No. 14-0626
Filed February 25, 2015

**WENDLING QUARRIES, INC.,**
        Petitioner-Appellant,

**vs.**

**PROPERTY ASSESSMENT APPEAL
BOARD OF THE STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Robert E. Sosalla,

Judge.


        A taxpayer appeals from a district court decision affirming the assessment

of the Iowa Property Assessment Appeal Board.  **REVERSED AND

REMANDED.**


        Steven J. Kahler of Schoenthaler, Bartelt, Kahler & Reicks, Maquoketa, for

appellant.

        Jessica Braunschweig-Norris and Brad Hopkins, Assistant Attorney

General, Des Moines, for appellee.


        Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

Wendling Quarries, Inc. (WQI) appeals from a decision of the district court, upon its petition for judicial review, affirming the order of the Property Assessment Appeal Board of the State of Iowa (PAAB). WQI contends the district court erred in affirming PAAB's finding that its quarry scale was a taxable improvement on the land under Iowa Code chapter 427A (2013). We reverse and remand for further proceedings.

## I. SUMMARY OF APPLICABLE LAW.

Except for certain exceptions not applicable to this case, all Iowa real property is subject to annual property tax. Iowa Code § 427.13. Real property for the purposes of taxation includes more than is covered by the traditional definitions of land and fixtures. Real property is statutorily defined in Iowa Code section 427A.1(1), in relevant part, to include buildings, structures, or improvements on the land and buildings, structures, equipment, machinery, or improvements attached to buildings, structures, or improvements on the land.

Tax assessment determinations are made by assessors, either county or city. *Id.* §§ 441.1, 441.17(2),. The taxpayer may protest an assessment. *Id.* § 441.37. The applicable board of review, either county or city, hears the protest and may modify the assessment. *Id.* The grounds for protest are statutorily limited. *Id.* § 441.37(1). Appeals from the board of review may be taken to PAAB.[1] *Id.* §§ 441.37A, 421.1A. PAAB decides anew all questions arising

---

[1] Appeals may also bypass PAAB and seek judicial review in the district court. Iowa Code § 441.38. When this is done, the district court hears the appeal in equity and review is, therefore, de novo. *Id.* § 441.39.

before the local board of review. Iowa Code § 441.37A(2). The decision of PAAB is the final agency action for the purpose of further appeal. *Id.* § 441.37A(3)(b). Petitions for judicial review may be made to the district court under Iowa Administrative Law Chapter 17A. *Id.* § 441.38B.

## II. BACKGROUND FACTS & PROCEEDINGS.

Wendling Quarries, Inc. (WQI) leases land in Cedar Rapids on which it built and operates a quarry scale to weigh mining products. In 2011, the City of Cedar Rapids Assessor assessed the leased property with a value of $212,423. Of that amount, $71,062 was attributed to the scale. WQI appealed the assessment to the city board of review, arguing the scale was not assessable property under Iowa Code section 427A.1(1). The board reduced the overall assessment by about $8000, but maintained the scale was assessable real property. WQI appealed to PAAB. PAAB concluded the scale was assessable under Iowa Code section 427A.1(1)(c) as an improvement "constructed on or in the land, attached to the land, or placed upon a foundation whether or not attached to the foundation." WQI petitioned for judicial review, urging the court to find the scale was nontaxable equipment or machinery rather than an improvement. The district court affirmed PAAB's order. WQI appeals, contending the district court erred in affirming PAAB's conclusion that the scale is assessable as an improvement to the land.

## III.    STANDARD AND SCOPE OF REVIEW.

Review of a decision of PAAB is for correction of errors at law.[2]  Iowa Code § 441.39.  In reviewing a district court decision affirming an agency, we apply the standards of chapter 17A to determine if we reach the same conclusion as the district court.  *Naumann v. Iowa Prop. Assessment Appeal Bd.*, 791 N.W.2d 258, 260 (Iowa 2010).  "If the agency's action was based on an erroneous interpretation of a provision of law whose interpretation has not been clearly vested in the agency, we shall reverse, modify or grant other appropriate relief from the agency action."  *Id.*; *see also* Iowa Code § 17A.19(10)(c).  We are bound by PAAB's findings of fact if they are supported by substantial evidence.  *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 464 (Iowa 2004).

WQI complains the district court concluded it was required to adhere to PAAB's interpretation of the relevant statutory provisions.  Under the Iowa Administrative Procedure Act,

> [a]n agency's interpretation of law is given deference if authority to interpret the law has clearly been vested by a provision of law in the discretion of the agency.  If the interpretation is so vested in the agency, then the court may reverse an agency's interpretation only

---

[2] WQI asserts review on appeal to this court is de novo.  The district court's standard of review is statutorily defined under Iowa Code section 441.39:

> If the appeal is from a decision of the local board of review, the court shall hear the appeal in equity and determine anew all questions arising before the board which relate to the liability of the property to assessment or the amount thereof. . . .   If the appeal is from a decision of the property assessment appeal board, the court's review shall be limited to the correction of errors at law.

Because we do not hear this case in equity, but from a judicial review of an agency decision, our review is consistent with the standards under chapter 17A.  *See* Iowa Code §§ 17A.19, 441.38.

if it is irrational, illogical, or wholly unjustifiable. If, however, the interpretation of a provision of law is not vested in the discretion of the agency, our review is for correction of errors at law and we are free to substitute our interpretation of the statute de novo.

*Tremel v. Iowa Dep't of Revenue*, 785 N.W.2d 690, 692-93 (Iowa 2010) (internal quotations and citations omitted). Our supreme court has determined that PAAB does not have the explicit or implicit authority to interpret Iowa Code section 441.21(1)(d) concerning actual, assessed and taxable value of property subject to taxation. *Naumann*, 791 N.W.2d at 260-61. Here, PAAB does not contend it has authority to interpret chapter 427A, and no provision of section 421.1A—the code provision enabling PAAB—indicates explicitly or implicitly that PAAB has the requisite authority. Thus, we may substitute our interpretation of the provisions of chapter 427A for that of PAAB and the district court.

## IV.    ANALYSIS.

### A. Placement of Burden of Proof.

WQI first complains the district court improperly placed the burden of proof on it to show the scale was exempted or subject to an exception from taxation.[3] Before the board of review, the protesting taxpayer bears the burden of proof. Iowa Code § 441.21(3)(b). Before PAAB, the burden remains on the taxpayer. *See id.* § 441.21(3)(b), 441.37A(2). On petition for judicial review to the district court, the burden is on the party asserting the invalidity of the agency action, in this case the taxpayer. *Id.* § 17A.19(8)(a). We apply the same standards, thus,

---

[3] WQI extensively briefed the difference between an exemption and an exception and who bears the burden of proof under either scenario. It cites *Rose Acre Farms, Inc. v. Bd. of Review*, 479 N.W.2d 260 (Iowa 1991), in support of its argument. That case, however, contains no discussion of burden of proof.

the district court correctly placed the burden on WQI to show the scale was not assessable under chapter 427A.

### B. Whether the Scale is Assessable Real Property.

WQI contends the district court erred in affirming PAAB's decision, asserting that PAAB incorrectly concluded the scale is an improvement subject to taxation under Iowa Code section 427A.1(1)(c). Section 427A.1(1) provides:

> For the purposes of property taxation only, the following shall be assessed and taxed, unless otherwise qualified for exemption, as real property:
> a. . . . .
> b. . . . .
> c. Buildings, structures or improvements, any of which are constructed on or in the land, attached to the land, or placed upon a foundation whether or not attached to the foundation. . . .
> d. Buildings, structures, equipment, machinery or improvements, any of which are attached to the buildings, structures, or improvements defined in paragraph "c" of this subsection.

Section 427A.1(2) provides:

> As used in subsection 1, "attached" means any of the following:
> a. Connected by an adhesive preparation.
> b. Connected in a manner so that disconnecting requires the removal of one or more fastening devices, other than electric plugs.
> c. Connected in a manner so that removal requires substantial modification or alteration of the property removed or the property from which it is removed.

WQI asserts the scale is equipment or machinery under section 427A.1(1)(d), but non-taxable because it is not "attached," consistent with the exception set out in section 427A.1(3). Section 427A.1(3) provides:

> [P]roperty is not "attached" if it is a kind of property which would ordinarily be removed when the owner of the property moves to another location. In making this determination the assessing

authority shall not take into account the intent of the particular owner.

Before PAAB, WQI presented the testimony of Jeff Derlein, the owner and operator of Derlein Scales, the company that sold WQI the scale and installed it in the land; Rich White, executive director of the Iowa Limestone Producers Association; and John Tuthill, WQI's property manager. PAAB summarized its findings of fact:

> Jeff Derlein testified Derlein Scale, Inc. installs, repairs, and services all types of scales. . . . Derlein testified a lot of his work includes quarry business and he is familiar with the use of industrial scales in the quarry industry. He installed the subject scale in the late 1990s and continues to service it. Derlein testified the subject scale has an approximate 20-year life. This is the second scale at the subject property. It was installed by reusing the existing piers, which are approximately 25-30 years old.
>
> Derlein explained the installation process for these types of scales. First, four main concrete piers, two approach ramps, and three wash-out slabs located between the piers are installed to serve as a foundation for the scale parts. Steel plates are bolted to the piers by concrete anchors. The scale consists of three modules with sensors or load cells in each cavity. There are a total of eight load cells in the subject scale. The three modules are linked together by bolts and I-beams are suspended in the center and rest on the end piers to support the structure. A crane is used to lift the steel plates from the truck and put them in place. Concrete is then poured into the deck modules. Highway guardrails are installed in the ground along the sides of the scale.
>
> Derlein testified that a new scale like the subject would cost approximately $52,000 to install including labor, materials, and setup. The concrete piers and approaches account for approximately $19,500 of the total cost. The scale components and installation account for the remaining $32,500. He reports most of the labor is in the foundation, with less labor on the scale. In Derlein's opinion, the subject scale is currently worth approximately $8000 to $12,000.
>
> Derlein characterized moving the scale as a simple process, which requires reversal of the installation process. It also requires a 40-ton crane at $1000 rental cost, one or two trucks, a three-man crew, and four hours at $800 to $1000 in labor costs to [disassemble] and load the scale. . . . It would cost approximately

another $2000 to re-install it at a new location and there would also be transportation costs associated. Derlein reported the owner generally tears out the concrete piers and approaches after the scale is removed. He testified there is a market for used scales. He said he would essentially act as a broker bringing together buyers and sellers in these types of sales if he was contacted.

Rich White reported . . . quarry operators are required by the State to be licensed and bonded . . . . [In order to leave a quarry site] the law requires the removal of all mining related waste products as well as buildings, structures, machinery and equipment . . . .

John Tuthill reported [WQI], a subsidiary of Manatt's Inc., has sixty-seven active quarries in Iowa, and owns fifty to sixty truck scales. Tuthill testified he has been in the industry sixteen years and does not recall [WQI] ever abandoning or leaving a scale behind when relocating or closing an operation. He testified the scale, all its component parts, and the scale house are required to be removed during the reclamation process. The scale would either be stored or sold in the used scale market. He describes this . . . as usual and customary practice in the quarry industry.

Tuthill also reported that over the past four or five years he has approached other assessors about the scales being personal property. According to Tuthill, Jackson, Linn, Cedar, Clinton, Johnston, Benton, and Muscatine Counties have exempted [WQI's] at-grade scales from their real estate assessments. He testified the City of Cedar Rapids is the first jurisdiction to not exempt the scales as personal property.

WQI also presented numerous statements from other mine operators in the area stating that scales are routinely disassembled and removed from quarry sites, and that there is a market for used scales.

The board of review presented the testimony of City Assessor Scott Labus. PAAB summarized his testimony as follows:

In Labus' experience, scales like the subject property generally stay on site, but, he acknowledged [WQI's] evidence indicates it typically moves it scales. In his thirty-nine years of experience, he has found that scales are generally left on industrial sites, at elevators, grain handling companies, and feed mills. In Labus' experience and opinion, the property owner usually does not remove a scale when it leaves a site, but rather it remains for use by the next owner of that site or salvage . . . .

Ultimately, Labus believes the scale is an improvement and not equipment. He believes equipment is used to process raw materials or is used to move raw material from one part of a manufacturing establishment to another manufacturing establishment. He contends the scale here is not used in this manner and is therefore not equipment.

On our review of the record, including the hearing transcript and photographic exhibits, we find substantial evidence supports PAAB's factual findings regarding the mechanics of the scale and the piers, and their operation, assembly, and disassembly.

Where the statutory provision does not provide a definition, we apply the plain meaning of the words. *State ex rel. Atty. Gen. of Iowa v. Terry*, 541 N.W.2d 882, 887-88 (Iowa 1995). Because chapter 427A does not define the words "building," "improvement," or "equipment," PAAB consulted Black's Law Dictionary and applied the plain meanings in its ruling. We find no error in PAAB's approach. In relevant part, PAAB concluded an "improvement" is "an addition to real property, whether permanent or not; esp[ecially] one that increases its value or utility or that enhances its appearance." *Black's Law Dictionary*, 773 (8th ed. 1990). "Equipment" includes "the articles or implements used for a specific purpose or activity." *Id.* at 578. A "structure" is "any construction, production, or piece of work artificially built up or composed of parts purposely joined together." *Id.* at 1464.

In analyzing the applicable law, PAAB noted, "Only twice has the Iowa Supreme Court had occasion to examine the meaning of equipment in the context of section 427A.1(1)(c) and (d)." PAAB referenced *Rose Acre Farms v. Board of Review*, 479 N.W.2d 260 (Iowa 1991), and *Western Outdoor*

*Advertising Company v. Board of Review*, 364 N.W.2d 256 (Iowa 1985). In *Rose Acre Farms*, our supreme court examined an egg production facility's use of cage stands, cage floor grids, feeding and water systems, egg collection systems, an egg collection belt, and an egg grading machine. 479 N.W.2d at 261. The supreme court concluded the property was equipment or machinery rather than a structure or improvement. *Id.* at 263. In so deciding, the supreme court particularly noted that all the equipment was electronically powered, automated, and easily taken apart, "much like an erector set," without causing damage to the land or the building in which the systems operated. *Id.* WQI urges us to conclude *Rose Acre Farms* is applicable here because testimony at the hearing showed that the scale could be easily disassembled and removed without adversely affecting the land. PAAB maintains, although the scale itself can be disassembled, the concrete piers and approach on which it is built would remain on the land.

In *Western Outdoor Advertising*, our supreme court found that highway billboards were structures or improvements "constructed on or in the land" within the meaning of section 427A.1(1)(c) and therefore subject to taxation. 364 N.W.2d at 258. The billboards were constructed upon wooden poles inserted in to the ground and set with concrete or dirt. *Id.* at 257. One set of poles was set eight feet into the ground. *Id.* Others were set three-and-a-half feet into the ground. *Id.* The poles were sealed so that they could be removed and reused elsewhere. *Id.* WQI argues *Western* is not applicable here because the scale was not constructed in the land—rather, according to WQI, the scale itself is only

"connected to the piers with removable concrete anchors." Further, WQI concedes the piers are themselves taxable as real property.

PAAB reached the following conclusions:

> [T]he Board finds this pit-less truck scale falls under paragraph 'c' as a "building[], structure[] or improvement[] . . . constructed on or in the land, attached to the land, or placed upon a foundation whether or not attached to the foundation." The scale's physical characteristics, the functional utility it provides to the quarry site, and the scale's relative permanence at the quarry site make this scale more like an improvement than equipment. The testimony and evidence established this scale is 70-feet-by-11-feet, has an eight-inch thick concrete top, and would require the use of a crane and two trucks if it were ever removed. The scale is placed upon concrete piers that serve as its foundation.
> The scale increases the functional utility of the quarry site, as it is used along with other real and personal property in the weighing of extracted material. Although the scale contains electronic components, it does not engage in the processing or moving of any material and is not automated like the equipment in *Rose Acre Farms*. Rather, the scale is more akin to the billboards in the *Western Outdoor Advertising Co.*, which also did not actively engage in any mechanized process.
> Finally, the scale was installed in the late 1990s, is still used at the site, and has a useful life of approximately twenty years. Given all these considerations, we cannot conclude the subject scale would commonly be understood to be equipment or machinery.

On our analysis of the existing law, however, we reach a different legal conclusion as to the categorization of the scale. While the district court understood the scale and the concrete base on which it rests together to form the taxable property, we view them as being separate for the purpose of taxation. The base on which the scale is built includes the concrete piers, the approach ramps, and the washout areas. These underpinnings together form a base where the scale rests and are either an improvement or a structure constructed in or on the land. Furthermore, WQI concedes that the concrete base is taxable

as real property. The concrete base increases the utility of the land at the quarry site by allowing the owner to place a scale over it. The piers are essentially concrete posts sunk forty-eight inches into the land, with the approach ramps and washout area allowing access to the scale components. The concrete structures are relatively permanent when compared to the scales—they have a lifespan of twenty-five to thirty years, while the scale has an approximate twenty-year lifespan.

The scale itself is an implement used to weigh mining products. The scale's parts are attached to the piers, within the meaning of section 427A.1(2), with bolts as fastening devices. As in the egg production equipment in *Rose Acre Farm*, the scale's components are easily disassembled and removed by reversing the assembly process, and leave no damaging impact on the land or the concrete base. We view the scale as a piece of mining equipment that can be taken apart and freely bought and sold between mining operations. Therefore, upon our review, we find the district court and PAAB erred at law by concluding the scale itself was an improvement under section 427A.1(1)(c) rather than equipment attached to an improvement or structure under section 427A.1(1)(d).

As PAAB and the district court concluded the scale was an improvement, neither considered whether the exception under section 427A.1(3) applied for equipment "attached" to buildings, structures, or improvements. We remand to PAAB for a determination of whether the exception under section 427A.1(3) applies to the scale in this case.

## C. Evidentiary Issues.

WQI contends PAAB and the district court erred in relying upon three exhibits to conclude the scale is an improvement. The three exhibits—a machinery and equipment guide, a property appraisal manual, and a letter from the chief appraiser of the Iowa Department of Revenue—were admitted into the record without objection. WQI now complains the information contained in the exhibits is irrelevant and PAAB erred in relying upon them. Irrelevant evidence should be excluded from administrative proceedings. Iowa Code § 17A.14(1). "[A] party preserves error on an issue before an agency if a party raises the issue in the agency proceeding before the agency issues a final decision and both sides have had an opportunity to address the issue." *Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 647 (Iowa 2013). WQI did not do so here, therefore, it did not preserve its objections for this appeal.

## V. Conclusion.

We find the district court erred in affirming PAAB's conclusion that the quarry scale was taxable as an improvement to the land. On our review of the record and the applicable law, we find the scale is equipment attached to the taxable concrete structure or improvement on which it rests. We remand to PAAB for a determination of whether the exception under section 427A.1(3) applies to exclude the scale itself from taxation as real property.

**REVERSED AND REMANDED.**